**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

_____

In re:

BRUCE GORDON DUNBAR,

              Debtor.

_____/

Case No. DT 09-06496
Hon. Scott W. Dales
Chapter 7

EDWARD SHER and MONA SHER,

              Plaintiffs,

v.

BRUCE GORDON DUNBAR,

              Defendant.

_____/

Adversary Pro. No. 09-80385

**OPINION AND ORDER**
**REGARDING DEFENDANT'S MOTION TO DISMISS**

PRESENT:    HONORABLE SCOTT W. DALES
                   United States Bankruptcy Judge

This matter is before the court on the complaint of Plaintiffs Edward and Mona Sher (the "Shers") to except from discharge a debt the Defendant-Debtor Bruce Dunbar ("Mr. Dunbar" or the "Debtor") incurred during a prepetition real estate transaction between the parties. Rather than answering the complaint, Mr. Dunbar filed a Motion to Dismiss (the "Motion," DN 4) pursuant to Fed. R. Civ. P. 12(b)(6). The Shers opposed the Motion, and the court heard oral argument on January 5, 2010 in Grand Rapids. Because the Shers' opposition relied on motion papers and the transcript of proceedings on a prior motion for a Rule 2004 examination and relief

from stay, and because the court has considered that material, the court is treating the Motion as one under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(d).[1]

The following facts are undisputed for purposes of the Motion. In 2002, Mr. Dunbar sold his home in Hawaii to the Shers. As part of the transaction, Mr. Dunbar provided the Shers with a "Seller's Real Property Disclosure Statement – Single Family Residence," as required by Hawaiian law. The Shers bought the house with $6 Million in cash, and financed the balance by delivering a promissory note to Mr. Dunbar. Over a year later, the Shers alleged that Mr. Dunbar failed to disclose certain defects in the real estate. The matter was submitted to binding arbitration in which the Shers stated claims for fraud and fraudulent concealment, various breaches of warranty, violation of Hawaii's real estate disclosure act, negligent misrepresentation and non-disclosure.

The arbitrator issued his written decision finding there was no merit to the fraud claim or any other claim except certain violations of Hawaii's real estate disclosure act. The arbitrator awarded the Shers their fees and costs bringing the total award to approximately $4.1 Million, and ordered that this amount should be set off by the amounts still due on the promissory note. Before the arbitration award could be confirmed in Hawaii state court, Mr. Dunbar filed a Chapter 7 bankruptcy petition.

On September 3, 2009, the Shers filed a Complaint to Determine Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6) (the "Complaint"). In response, Mr. Dunbar filed this Motion, arguing that the doctrine of collateral estoppel bars both counts of the

---

[1] Mr. Dunbar is not prejudiced by the court's converting the Motion to one under Rule 56 because the court is granting the Motion. For their part, the Shers are not prejudiced because they offered the extra-record materials and have had a reasonable opportunity to present all the material pertinent to the Motion, principally the transcript of proceedings on their Rule 2004 and lift stay motions, held September 30, 2009 in Traverse City, Michigan (Base Case DN 61). In this opinion, the court will refer to portions of that transcript as "Tr. at __."

Complaint even though the arbitral award was never confirmed.   The Shers argue that the unconfirmed award does not have preclusive effect because it is not a final judgment as required by Hawaiian law. They further argue that because Mr. Dunbar has argued in prior motion practice that the arbitration award was not a final judgment, he is judicially estopped from taking an inconsistent position in this proceeding.  The Debtor has the better argument.

Collateral Estoppel

The Shers argue that under Hawaiian law, after an arbitration award has matured into a final judgment entered by a circuit court, the judgment would be entitled to be treated in all respects as any other judgment and accorded full faith and credit in this court.  See 28 U.S.C. § 1738 (Full Faith and Credit Act).  Implicit in their argument is the premise that the arbitral award is not entitled to preclusive effect until it is transformed into a Hawaiian judgment, through the confirmation process.

The Full Faith and Credit Act provides in pertinent part as follows:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or possession from which they are taken.

28 U.S.C. § 1738.  An unconfirmed arbitration award could not be subject to the Full Faith and Credit Statute because arbitration is not a "judicial proceeding" within the meaning of the statute.

McDonald v. City of West Branch, Michigan, 466 U.S. 284, 288 (1984). Consequently, the Full Faith and Credit statute does not apply, and provides no authority for limiting the preclusive effect to that provided by Hawaiian law. Preclusion, if available, must depend upon a rationale other than full faith and credit. Id.

Several courts have found that arbitration awards, even those that have not been court-confirmed, are entitled to preclusive effect. See Val-U Construction Co. of South Dakota v. Rosebud Sioux Tribe, 146 F.3d 573, 582 (8th Cir. 1998) (the parties were given a full and fair opportunity to litigate the relevant issues in arbitration, and under the Federal Arbitration Act, federal courts must confirm arbitration awards absent a timely motion to vacate); Jacobson v. Fireman's Fund Insurance Co., 111 F.3d 261, 267-68 (2d Cir. 1997) (an unconfirmed arbitrator's award can furnish the basis for invoking the doctrine of collateral estoppel); In re Robinson, 256 B.R. 482 (Bankr. S.D. Ohio 2000) (final but unconfirmed arbitral award binding in Chapter 12 claim objection hearing); Wilbert Life Insurance Co. v. Beckemeyer (In re Beckemeyer), 222 B.R. 318, 321 (Bankr. W.D. Tenn. 1998) (an arbitration award that has become final, in accordance with the rules pursuant to which it was issued, has preclusive effect even if it has not been confirmed).

As the court in Robinson observed, "the Sixth Circuit has not directly addressed this issue, [but] it has shown deference to arbitration decisions." Robinson, 256 B.R. at 488 (citing Central Transport, Inc. v. Four Phase Systems, Inc., 936 F.2d 256, 259 (6th Cir. 1991) (noting that "federal courts ordinarily give preclusive effect to arbitrations")); Decker v. Merrill, Lynch, Pierce, Fenner and Smith, Inc., 205 F.3d 906, 910-11 (6th Cir. 2000) ("[i]n light of the strong federal policy in favor of enforcing arbitration agreements, courts only have a limited role in reviewing arbitration awards as authorized by the [Federal Arbitration Act]"). The Sixth Circuit

noted that courts "play only a limited role in reviewing arbitration decisions," and "are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misinterpretation of the contract." <u>Andersons, Inc. v. Horton Farms, Inc.</u>, 166 F.3d 308, 328 (6th Cir. 1998) (<u>citing</u> <u>Shelby County Health Care Corp. v. American Fed'n of State, County & Municipal Employees</u>, 967 F.2d 1091, 1094 (6th Cir. 1992), <u>and</u> <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 36 (1987)).   There are only limited grounds for revisiting the merits of an arbitral award, such as "the award was procured by corruption, fraud, or undue means" or that "there was evident partiality or corruption in the arbitrators." <u>Cf.</u> 9 U.S.C. § 10(a)(1)-(2).  The Shers, who have moved to confirm the arbitrator's award in this case, are certainly not challenging the award on these grounds.

The court will follow the decisions applying the doctrine of collateral estoppel to final but unconfirmed arbitration awards. First, the twin purposes of judicial confirmation of arbitral awards is to guard against corruption and to make the arbitrator's decision enforceable as a court judgment.   In general, the effectiveness of an arbitrator's decision does not depend upon confirmation, though enforcement by way of execution certainly does.  The Shers, who sought to confirm the award, are not suggesting that the arbitration process was flawed or corrupt. And, in ruling on the lift stay motion, the court declined to permit them to enforce it as a judgment, at least with respect to the escrowed funds as explained below.

Because the Shers and Mr. Dunbar have had a full and fair opportunity to litigate the fraud and intentional tort issues before the arbitrator, it would be unfair to provide either party with a "second bite at the apple." <u>Robinson</u>, 256 B.R. at 488.  Given the strong federal policy in favor of arbitration, re-litigating the same issues in the context of a non-dischargeable debt action would be inconsistent with that policy, not to mention wasteful of the parties' and the court's

resources.  Mr. Dunbar entered into the contract to sell his house with a mandatory arbitration clause for disputes, and the parties invoked that clause in Hawaii. The parties must live with the benefits and burdens of this bargain, including their decision to pursue arbitration.  Here, because the arbitrator has expressly rejected the Shers' fraud and concealment claims, the Shers must live with that decision, too.

To summarize, in the Sixth Circuit, the doctrine of collateral estoppel may be invoked when the following elements have been established: (1) the issue precluded must be the same one involved in the prior proceeding; (2) the issue must actually have been litigated in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and 4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue. N.L.R.B. v. Master Slack and/or Master Trousers Corp., 773 F.2d 77, 81 (6th Cir. 1985).

Upon review of the record, and as the Shers' counsel confirmed at oral argument, there is no dispute that the fraud issue in the nondischargeability case was the same one involved in the prior proceeding. Likewise, there is no dispute that the fraud issue was actually litigated in the arbitration and that the parties were provided a full and fair opportunity to litigate.  Similarly, the court finds the determination by the arbitrator that Mr. Dunbar did not commit fraud when he sold his home, was a necessary part of the decision to deny the fraud claim in the arbitration.

Based on the Shers' representations at oral argument, the only impediment to giving the arbitral award preclusive effect is that it remains unconfirmed, and because the court has rejected that argument in favor of following decisions such as Robinson and Beckemeyer, the court finds

that, but for the Shers' judicial estoppel argument, collateral estoppel should apply against the Shers in this case.

## Judicial Estoppel

The Shers further argue that Mr. Dunbar has taken inconsistent positions before this court. In support of this proposition, the Shers state that in his response to a motion for relief from the automatic stay, Mr. Dunbar argued that the arbitration award was not a final judgment. According to the Shers, this argument resulted in the court's denying a modification of the stay, which prevented them from seeking to certify the arbitration award and turn it into a judgment of the Hawaiian state court.

Mr. Dunbar, on the other hand, argues that he is not adopting inconsistent positions because he never asserted that the arbitration award was a final judgment. Instead, he argued that the award was unconfirmed and not a judgment. It was however, a final adjudication of the fraud claims and therefore entitled to preclusive effect.

Courts have considered three factors when determining whether to apply the doctrine of judicial estoppel, the doctrine designed to protect the court's integrity by preventing parties from playing "fast and loose" with the judicial machinery.  For the doctrine to apply, (1) a party's later position must be clearly inconsistent with its earlier position; (2) the party asserting the inconsistent position must have successfully persuaded the court to accept its previous position so that acceptance of  a later inconsistent position would create the perception that the first or second court was misled; and (3) the party asserting inconsistent positions would gain an unfair advantage unless estopped from asserting inconsistent positions. New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (describing doctrine of judicial estoppel).

The court has reviewed the transcript of the September 30, 2009 hearing on the Shers' Rule 2004 motion and motion for relief from stay, and agrees that the Debtor is asserting inconsistent positions. At the prior motion hearing, the Debtor's counsel seemed to suggest that the arbitration process was flawed and the award should not be confirmed; on the present Motion the Debtor's counsel is advocating enforcement of the arbitral award, with respect to its issue preclusive effect. Inconsistent positions, however, are not enough to warrant judicial estoppel because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations." New Hampshire v. Maine, 532 U.S. at 750-51.

At oral argument, the Shers' counsel suggested it was difficult to know whether the court accepted the Debtor's prior position because the court was less than clear in giving its reasons for denying relief from the automatic stay. Nevertheless, the Shers contend that the court accepted the Debtor's arguments regarding the arbitration award.

The court's recollection, confirmed by the transcript, is that it denied relief from the automatic stay because it agreed with the Trustee that the Shers were effectively seeking to determine the extent of the estate's interest in the escrowed funds, not because it accepted the Debtor's position that the arbitration process was flawed. Further, the court found that under these circumstances, Fed. R. Bankr. P. 7001 required an adversary proceeding rather than a summary proceeding on a motion for relief from stay. See Tr. at 28-29 ("the reason I'm going to deny [the lift stay motion] is, with respect to any relief that is attempting to determine the validity, priority, or extent of the competing interests in the escrowed funds . . . I agree with the Trustee -- I think it does require an adversary proceeding.").

In addition, the court was concerned about the expense of litigating in Hawaii, and was unwilling to cede its jurisdiction over the escrowed funds.  See Tr. at 29, lines 3-6 ("Hawaii is far enough away to be pretty inconvenient") and id. lines 8-11 ("I'm not persuaded that I should be ceding that [jurisdiction over the escrowed funds] to the state courts of Hawaii.").  Nothing in the court's ruling suggests it accepted the Debtor's argument that the arbitration proceedings were flawed. Finally, although according the arbitral award issue preclusive effect does give the Debtor an advantage, the court does not perceive the advantage as "unfair" in any way, particularly given that the Shers themselves attempted to confirm that very award.

For the foregoing reasons, the court does not believe that the Shers' judicial estoppel argument should prevent the Debtor from advancing his collateral estoppel argument.

Conclusion

The court has determined, as a matter of law, to give the arbitrator's rejection of the Shers' fraud claims issue preclusive effect. Given the Shers' concession at oral argument that the elements of collateral estoppel (other than the final confirmed judgment element)  were satisfied, the court finds no genuine issue of material fact to prevent entry of judgment in Mr. Dunbar's favor.  Although the court is denying relief in this adversary proceeding, the decision is without prejudice to the Shers' proof of claim, or the Debtor's objection, if any, to that proof of claim.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 4) is GRANTED and the Clerk shall enter a separate judgment dismissing the Complaint.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon John T. Gregg, Esq., attorney for Plaintiffs, and John T. Piggins, Esq., attorney for Defendant.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: January 11, 2010**